I do want to thank you very much for taking the CJA appointment on this case. Without your willingness to serve, we would have all sorts of problems. So, thank you. Thank you, Your Honor. Good morning, and may it please the Court. There is no dispute that if Richard Crayton were sentenced today, Section 841B1B's death results penalty enhancement would not apply because the government did not prove that issue to the jury. But that's not precisely why we're here today. We're here today so that this Court can decide for the first time whether Mr. Crayton can have a procedural opportunity to make the case that his death results penalty enhanced sentence is legally invalid, given a post-sentencing change in the law. Now, the legal landscape regarding the issue before this Court has changed since the party's briefing. And, of course, I'm referring to this Court's recent decision in Jones v. Hendricks. And so, I would like to start there, with the impact that Jones has on this appeal, and then, if time permits, address other remaining merits issues. So turning to the issue of Jones, there are two reasons why we think that opinion should not stand in the way of the relief that Mr. Crayton is seeking today. And the first and most important is that Jones simply cannot be reconciled with this Court's precedents, including, most importantly, Abdullah v. Hendricks, but also Hill v. Morrison, United States v. Lurie. This Court has a very strong prior panel rule. And it is clear that if there is any sort of a disagreement between two opinions, it is the earlier of the two that controls. And respectfully, Your Honors, we believe that Abdullah is the case that should control the outcome here. And there are two reasons that that's particularly the case. The first is the standard that this Court applied in Abdullah. The standard was whether an individual had a, quote, unobstructed procedural opportunity, end quote, to present their arguments based on a change in statutory law. Those weren't words that were created or stated for the first time in this Court's opinion in Abdullah. Those words actually, those precise words appear one year earlier in a Ninth Circuit opinion that is applying the statutory change test that is similar to the one that we believed applied in this circuit and that we still believe applies in this circuit under Abdullah and other cases. Again, those precise words are in another opinion that is applying the statutory change analysis. Although, to be fair, when all of this happened, there was no contrary view. The Tenth Circuit didn't decide anything until, what, 2011? And then the Eleventh Circuit was 2016. And so is it perhaps the case that Abdullah just sort of repeated what other circuits had said, assumed that that was the rule and applied what the rule was? In other words, the parties didn't argue about what the right rule was in Abdullah. So I don't think so, Your Honor, because I think in Abdullah, this Court very clearly adopts and applies a test. It makes it clear that it's the first time that this Court actually had decided what the standard was for changes in statutory law. In previous cases, the Court, I believe specifically in Hill, the Court said, well, it's not a list of four things. That's not sufficient to get you to the Savings Clause. And in Abdullah, for the first time, the Court says, what is the standard? And it adopts the unobstructed procedural opportunity test. Well, I'm not positive it adopted it. As I read the opinion, it did mention it. There's no question. It mentioned it once. But it seems to me like it was just addressing the argument of the parties. And again, there was no contrary view. And so it said, on the argument of this party, this argument simply does not work. Why isn't it fair to read it that way, and then read the later case as perhaps actually making a holding on this precise question, which I assume was briefed and argued in the later case? Sorry, you mean briefed and argued in Jones? Correct. Yes, yes, you're right. It was briefed and argued in Jones. I think going back to Abdullah, I really, I guess, you know, we might disagree on this, but I really do think that the Court adopts the test. I direct the Court specifically to this Court's analysis of the Inri Davenport opinion, which comes from the Seventh Circuit. I think Abdullah is a case where the Court is saying, hey, in the past, we've said this is not the standard. And at that point, although there wasn't a circuit split on, you know, whether or not you needed a change in, whether or not a change in statutory law could satisfy the saving clause, the Circuit certainly had different standards, right? There was no consistent standard. And I think this Court, in its discussion of Inri Davenport, and especially in footnote 5 of this Court's opinion in Abdullah, does indeed adopt that statutory unobstructed procedural opportunity test. And I think, again, there wasn't the circuit split that now exists, but there was differing standards in existence at that time, including a separate standard regarding innocence, which I cannot recall, but I think may have been mentioned and then said that's not applicable in Abdullah. So we're not going to decide whether or not we need to adopt the innocence standard. And you know, it's not just, I'm not the only one that reads Abdullah that way. I think it's important to note that the government did in its briefing before this Court in this case, the government below had argued in favor of the, you know, the Tenth and Eleventh Circuit's construction of the saving clause below. And on appeal, after briefing and after our briefing raised and discussed Abdullah and other cases before this Court, the government agreed that in light of, quote, binding precedent, that this Court had indeed adopted the statutory unobstructed procedural opportunity test. And the Court admitted the same thing in its 28-J letter, that the, pardon me, the government said the same thing in its 28-J letter. It included, I believe, the Tenth Circuit in Prost and a number of secondary sources. There are, I think everyone except for, respectfully, this Court in Jones v. Hendricks has interpreted Abdullah in the way in which we did and in the way in which we are advocating. So I again come back to this Court has an incredibly strong prior panel role. Let me ask you this. I think the really hard case under the Eleventh and Tenth Circuit approach, the cognizability rule, is the one where a petitioner tries to raise it in the initial 2255 and they say, nope, circuit precedent binds us here, and then can't raise it later, can't raise it three or four years, the exact same argument once there's some intervening decision that says, no, actually that argument you originally raised was absolutely correct under later precedent. My understanding of this record, though, is this argument, the argument, the barrage argument, was never previously raised by your client. Am I right about that? Yes, Your Honor. That's my reading of the record as well. And I guess I direct the Court back to Inri Davenport and probably the wishes of almost all district court judges, which is if you adopt a rule that it needs to be raised in the first petition, courts are going to be flooded with, I mean, what, hundreds of hypothetical arguments. This statute could change in the future. This statute could change in the future. And if the Supreme Court narrows what conduct is criminal, I want to preserve that argument. I just think that it would create an incredibly challenging, difficult record. And it also, it just doesn't, I mean, I guess to your point, yes, hypothetically the record is preserved, but I think that we're setting a very dangerous precedent as far as what habeas or post-conviction prisoners are going to have to present in their very first petition. I just think that it would create an incredibly difficult and unmanageable situation. And turning to raising it in the first petition, I guess turning back to Jones, something that this Court said was, well, the issue could be reviewed in en banc review, or perhaps the Supreme Court would take it up. And, Your Honors, respectfully, I've never seen a certificate of appealability granted on an issue that is foreclosed by binding precedent. I just don't think as a practical matter, through an initial 2255 and a certificate of appealability, individuals are ever going to have a chance to have that be the vehicle for meaningfully addressing their argument that the law should be different, that the statute written by Congress doesn't actually cover the conduct for which an individual is sitting in prison. And I think that leads me to our second fundamental concern with Jones v. Hendricks, and that is that we disagree that that is most consistent with the text of 2255. I think the question is whether the remedy through 2255 is effective, is adequate, and for the reasons we've been discussing, if there's absolutely no chance of getting appellate review, I don't think that the remedy can be considered either effective or adequate. And I think putting emphasis on this idea of testing to the exclusion of the remainder of 2255E's savings clause raises serious constitutional issues and focuses on one word to the exclusion of the others. Your Honors, briefly, I would like to address why we believe that Mr. Creighton did not have a procedural opportunity to present his barrage argument to his original 2255 court or on direct appeal. And I think the key here lies in the Seventh Circuit's decision in Krieger, in the first Krieger opinion. There's been a lot of discussion of Hatfield, but both Hatfield and Krieger were decided before Mr. Creighton was sentenced, before Mr. Creighton was tried. And in fact, Krieger is the opinion that came down, I think, a month before his trial. And if I were a trial attorney, I sure would be paying a lot of attention to the most recent appellate decision on the only fighting issue in the case, which was whether or not the death results penalty enhancement applies. So again, Hatfield is a jury instruction case and Krieger is a sufficiency case. And I think that Krieger very clearly does apply the same sort of contributory cause standard that this court had applied before barrage. The court in that opinion described the evidence of cause of death as muddled and slim. And in fact, the author of Krieger I granted habeas relief to the defendant in that case in Krieger II, agreeing that the Krieger I opinion was not consistent with barrage. I see that I've gotten into my rebuttal time, so unless there are any other questions, I will reserve the remainder of my time. Thank you. Whenever you're ready, Ms. Kirkpatrick. Good morning, and may it please the court. My name is Lisa Kirkpatrick. I'm an assistant U.S. attorney here in the District of Minnesota. Ordinarily, I would inform the court that I'm here on behalf of the United States. And while the United States is the named defendant in this case, it should actually be the custodian. I believe that I'm here on behalf of the warden of FCI Sandstone, which is the facility where the defendant was housed at the time he filed this 2241 petition. In the defendant's reply brief, he's indicated that he's since been transferred to FCI Oxford in Wisconsin. So jurisdiction would no longer be proper in the venue and jurisdiction would no longer be proper in the District of Minnesota. But to the extent a waiver would be necessary of personal jurisdiction for purposes of the issues here, the warden of Sandstone does waive that personal jurisdiction question. Counsel, let me go ahead and ask you, can Jones v. Hendricks be harmonized with Abdullah? It absolutely can be harmonized. The government harmonized those two propositions in its initial briefing to this court prior to the supplemental briefing. The red brief in this case harmonizes it. What Abdullah held was that a defendant needs to have an unobstructed procedural opportunity to present a claim. What this court held in Jones is that so long as a defendant's claim was cognizable in an initial 2255 petition, 2255 is not inadequate or ineffective. So there is no conflict between Abdullah and 2255 itself. And that rule applies whether or not there has been a change in case law since the denial of the 2255 motion. Counsel, is it really harmonized if you have to ignore the plain meaning of the words ineffective and inadequate? It is, Your Honor, for all the reasons described by the Jones court, which does a really thorough deep dive into that question, as well as the 11th Circuit in McCarthin and the 10th Circuit in Prost. Turning to the question that Judge Strauss asked regarding the harder case where there has been a change in case law, my response there, Your Honor, is that 2255 provides for different statutes of limitations depending on the claim raised. The default rule is under 2255 F1. And that's a one-year after judgments become final to raise claims. Generally, those are ineffective assistance claims, but also, as in this case, it was an Apprendi claim raised, turned out to be an Eleni claim. But 2255 F3 provides for a one-year statute of limitations when there's been a new rule recognized by the Supreme Court. The defendant here could have waited. Now, it's the government's position that there was not a new rule as it applies to convictions in the 7th Circuit in Barrage. But the defendant wasn't obligated to file a petition within one year of the time his conviction was finalized. Although, that's not exactly the hard case. The hard case is where it's actually raised. He raises a Barrage issue in the 7th Circuit. The 7th Circuit comes back and says, oh, no, doesn't work. Barrage hasn't been decided yet. And then you come back three or four years later, you say, look, I was right in my first petition. Now, I get relief, right? No, it's a second or successive petition, and it's not a constitutional case. What do you do about that instance? Your Honor, I agree that that's a harder case, and I agree that that doesn't feel fair. But Congress struck a balance between finality and error correction when it limited the availability of successive motions. And courts must apply the statutes as written and not as they think is the better result, which would, what would be, the courts would be doing if they were to write a third exception into 2255H by allowing statutory challenges to come through 2241. So really, it's just the harshness of the retroactivity rules. I mean, there's always going to be petitioners, whether it's Teague retroactivity or whether it's the retroactivity in ADPUD, there's just going to be petitioners that are just out of luck because they didn't file at the right time. That is true. And that's a policy decision that is for Congress to decide whether or not that's the proper balance that they want to struck in terms of finality versus error correction. I will... Let me ask you one more question. It actually has to do with what Judge Graz was asking about. Opposing counsel made this point, too. Prior to Jones, the position of the government seemed to be that Creighton lost under Abdullah. And really, there were, I didn't see an issue or an inkling of we really should adopt the 10th or 11th Circuit rule. So the position of the government, at least prior to Jones, was, you know, Abdullah controls. So I guess my question is, why not make that argument here? If you thought it was so clear that we had not adopted the unobstructed procedural opportunity rule, why not make that argument here? The government's briefing, both in front of the district court as well as in its red brief here, argues that the procedural opportunity aligns with and is essentially the 10th and 11th Circuit's cognizability rule. So we have argued that that rule is, in fact, the procedural opportunity rule. We did change course a bit in the supplemental briefing, and that turned out just to be wrong for a variety of reasons. And obviously, this Court isn't bound by the government's interpretation of this Court's case law. But we were right in the initial briefing that this Court's procedural opportunity test is in line. And on the prior panel argument rule, that argument itself has already been decided by Jones. Jones said that arguments that we've adopted one test or another have been greatly exaggerated. So this Court has already considered whether they were bound by any particular law and held that they were not. And then they adopted, in the first instance, the Jones rule. And it should be uncontroverted that a Burridge-type claim cannot proceed through 2241 in light of Jones. Your Honors, I'm happy to answer any questions that you may have. I think that this case started out with a certain level of complexity, but it's been made a very easy case in light of Jones, and the District Court's judgment should be affirmed. Thank you. Seeing none, thank you. Thank you, Your Honors. Two brief points. The first point that I'd like to address is the idea that Mr. Creighton should have waited and filed a later 2255. I don't think that that is an actual solution, because what you are doing is forcing, then, an individual to potentially give up claims that they have, right? Because these are different limitations that might arise at different periods. I'm actually not certain what the law is in the case. The limitation applies to each separate basis for raising a 2255. In other words, if at a later point, the Supreme Court changes the law, and it then applies retroactively like Burridge, you couldn't then also raise an ineffective assistance of counsel claim, because it's been more than one year. So I don't think that simply waiting is a truly practical viable option. Also, considering the harshness, to Judge Strauss' point about the harshness of retroactivity rules, I think the key here is that this isn't a procedural rule. This is a question of what Congress has deemed a crime. Right now, Mr. Creighton is sitting in prison for something that, under the construction of the death results penalty enhancement by the Supreme Court, is not a crime. And I think that raises both serious due process concerns, separation of power concerns, and also concerns about the suspension of the writ of habeas corpus. The last point that I'll make is, I don't think that Jones resolves the prior panel issue. I really don't. I think that, again, this Court's prior panel rule is incredibly strong and clear. And if this Court thinks that there's any sort of a question, then perhaps the answer lies in en banc review. But I do not think that Jones can be read to fairly resolve the prior panel rule, in part because I don't think it only addresses Abdullah in a single footnote, footnote three of the opinion. And I don't think that the footnote just says that we surveyed the majority approach and then held it was in opposite to petitioner's case. I, again, would direct the Court back to footnote five, the footnote regarding Inree Davenport. The Court says we don't have to address all of the different factors that might apply for the saving clause to be applicable, but we agree with this first factor, the statutory test and the unobstructed procedural opportunity standard. So, Your Honors, we are asking that you reverse and remand for issuance of the writ of habeas corpus. Since the jury was not able to agree that Mr. Creighton did indeed cause, or was subject to the death results penalty enhancement, we believe that he should be re-sentenced without the enhancement. Thank you, unless the Court has any further questions. Thank you. The case is taken under advisement and we will render an opinion in due course. Have a good day.